Argued April 29; peremptory writ allowed May 2, 1936

## LADD & BUSH *v.* SIEGMUND ET AL.
### (57 P. (2d) 395)

*Custer E. Ross* and *I. H. Van Winkle,* both of Salem, for plaintiff.

*William H. Trindle,* District Attorney, of Salem, for defendants.

BAILEY, J. This is an original proceeding in mandamus instituted by Ladd & Bush, Bankers, a cor-

poration, as plaintiff, against John · C. Siegmund, county judge, and Roy S. Melson and LeRoy Hewlett, county commissioners, constituting the county court of Marion county, and U. G. Boyer, county clerk of Marion county, to require them. to draw, issue and deliver to the plaintiff a warrant of Marion county, Oregon, directing the treasurer of said county to pay to the plaintiff the sum of $1,122.44 in settlement of an account stated in favor of the state relief committee, representing one-fourth of the amount paid by said committee in old-age assistance to residents of Marion county, and assigned to the plaintiff, or to show cause, on· or before a designated date, for not so doing.

The alternative writ sets forth that both the state relief committee and the county relief committee were at all the times mentioned in the writ, and now are, duly appointed, qualified, organized and acting bodies under and pursuant to the provisions of chapter 55, Oregon Laws, Special Session, 1935; that pursuant to chapter 407, Oregon Laws 1935, "the state relief committee has adopted a rule and regulation and furnished the same to the several county relief committees as a part of the procedure for the furnishing of old-age assistance to persons. thereto entitled by law in the state of Oregon, whereby the county relief committee of each county is required to submit each month to the state relief committee the list of persons entitled to old-age assistance in the county, as hereinafter set forth;" and that the rules so adopted provide that the state relief committee shall proceed to make payments to each of the persons named in such list in the respective amounts set forth therein, and render a statement of account to the county from which such list is received, showing the county indebted to ·the state relief com-

mittee for one-fourth the total amount paid to all such persons named therein, for the month covered by such statement.

The writ further states that on or about March 31, 1936, the Marion county relief committee and the county court of Marion county certified to the state relief committee a list of persons residing in Marion county eligible to receive old-age assistance under said chapter 407 and the United States social security act, which said list set forth the amount to be received by each of said persons as fixed and determined by the county relief committee, the total of said amounts being $4,489.75; that the state relief committee passed upon and approved said application and made payment to the several persons named in said list of the amounts set opposite their respective names, in the total sum above mentioned; that such list so submitted to the state relief committee was intended to and did constitute an application to the state relief committee for old-age assistance to each of the persons therein named; that after making said payments the state relief committee rendered a statement to the county court of Marion county for payment to the state relief committee of one-fourth the total amount of said payments, to wit, $1,122.44, payment of which by the said county court has been refused; and that the said claim against the county court for the payment of said amount of money has, by the state relief committee, been assigned to the plaintiff.

To this alternative writ the defendants have demurred on the ground that the facts therein stated "do not constitute grounds for suit and are insufficient to authorize the issuance of said alternative writ of mandamus or to require the defendants to do or perform

the act and thing in said writ commanded and directed''.

It is the plaintiff's contention that the state relief committee has, under chapter 407, *supra,* authority to make the rules and regulations referred to in the alternative writ; that pursuant to such law and the rules and regulations so made, it became the duty of said state relief committee to make disbursements or payments directly to those entitled to old-age assistance; and that upon its making such payments it became the duty of the county court to cause warrants to be issued by the county clerk to reimburse the state relief committee.

The defendants, in resisting the plaintiff's claim, assert that the money raised by the county for old-age assistance should be disbursed by the county relief committee to those entitled to such assistance; and that the law contemplates that the state relief committee shall allocate and pay to the county, to be disbursed by the county relief committee, the amounts made available through appropriation by the state legislature and by the federal government under the social security act.

In approaching a solution of the question here presented it is of some assistance to refer to and review briefly the state legislation concerning old-age assistance and other relief to the needy. The legislature in 1933 enacted chapter 15, Oregon Laws 1933, with purpose expressed in the title thereof as follows: ''To relieve the people of the state [of Oregon] from hardships and suffering caused by unemployment.'' This act created both a state relief committee and a county relief committee for each county and prescribed the duties and separate authority of such committees. By this legislation no mention was made of old-age pensions or old-age assistance. Later in the same session

there was enacted chapter 284, Oregon Laws 1933, providing for "an old-age pension" and the establishment in each county of the state of a county old-age pension board, designated in said act as an "old-age pension commission". The board of county commissioners of Multnomah county and the respective county courts of the other counties of the state were designated as the old-age pension commissions of their respective counties, the members thereof to serve without compensation.

The 1935 legislative assembly enacted chapter 407, Oregon Laws 1935, in anticipation of the enactment by Congress of a social security law. This chapter specifies that its provisions "shall become operative when there is made available by the United States government or by its agency" a fund for old-age assistance to residents of this state. This enactment also repealed chapter 284, Oregon Laws 1933, and the duty of carrying out the provisions of chapter 407, *supra,* was conferred upon the state relief committee and the county relief committees "as created by chapter 15, Oregon Laws 1933".

On August 14, 1935, Congress passed the social security act, U. S. C. A., title 42, chapter 7. Section 302 of this act provides in part as follows:

"A state plan for old-age assistance must (1) provide that it shall be in effect in all political subdivisions of the state, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the state; (3) either provide for the establishment or designation of a single state agency to administer the plan, or provide for the establishment or designation of a single state agency to supervise the administration of the plan; (4) provide for granting to any individual, whose claim for old-age assistance is denied, an opportunity for a fair hearing before such state

agency; (5) provide such methods of administration (other than those relating to selection, tenure of office, and compensation of personnel) as are found by the board to be necessary for the efficient operation of the plan; (6) provide that the state agency will make such reports, in such form and containing such information as the Board may from time to time require, and comply with such provisions as the Board may from time to time find necessary to assure the correctness and verification of such reports. . . .''

The act further provides for the contribution by the federal government of 50 per cent of the amount expended for old-age assistance under the state plan with respect to each individual who at the time is 65 years of age or over and not subject to certain disqualifications therein mentioned.

The foregoing social security act was passed subsequent to the enactment of chapter 407, *supra,* and prior to the enactment of chapter 55, Oregon Laws, Special Session, 1935. This latter act deals principally with relief other than old-age assistance, mothers' pensions or ''pensions furnished in accordance with any law that makes a definite age a qualification for receiving such assistance or pension''. It repeals chapter 15, Oregon Laws 1933, and thereby abolishes the state relief committee and the various county relief committees as created by the 1933 law, and provides for ''a board to be known as the state relief committee, which shall have the duties and powers in this act provided, and such other duties and powers as may be conferred upon it by law''. It also creates county relief committees for the respective counties of the state and prescribes their duties. The word ''relief'' as used in the act (chapter 55, *supra*) is defined to mean ''aid of any character furnished to needy persons and their dependents in the state to the extent of such need and

the availability of funds", except old-age assistance, mothers' pensions and "pensions furnished in accordance with any law that makes a definite age a qualification for receiving such assistance or pension".

The bill which was enacted as chapter 55, as originally introduced, was limited in its scope to the administration of relief as that word is therein defined. In committee, the title of the bill was amended so as to authorize the state relief committee to cooperate with the federal government in furnishing old-age assistance, and subdivision 2 of § 3 of the act, which section originally authorized, directed and empowered the state relief committee to cooperate with the federal government and the counties of the state in furnishing relief, was extended to include old-age assistance. As the bill was finally enacted into law it authorized, directed and empowered the state relief committee to cooperate with the federal government and the counties of the state in furnishing relief and old-age assistance.

The only provisions of chapter 55, other than subdivision 2 of § 3 above referred to and the provisions creating the state and county relief committees, which are in any way applicable to the question now before us, are subdivisions 3, 5 and 6 of § 3. Subdivision 3 makes it the duty of the state relief committee "to prescribe and adopt all rules and regulations and forms necessary or convenient in carrying out the provisions" of the act and "to furnish such forms to the county relief committees". Subdivision 5 relates to the appointment of an administrator and other employees and fixing of their compensation. And subdivision 6 provides for the necessary bonds and undertakings to be given by employees of the state relief committee.

The plaintiff relies principally upon the provisions of chapter 407, Oregon Laws 1935, *supra,* as authority for the state relief committee to make the final decision as to the need and amount of old-age assistance to each recipient, and to disburse directly to such individuals the amount respectively determined in each case; also to require the counties to reimburse the state relief committee to the amount of one-fourth the old-age assistance given to residents of the respective counties. It is therefore necessary to review at some length the provisions of chapter 407.

After specifying who shall be entitled to old-age assistance, the act requires those seeking assistance to make application to the county relief committee, which committee is required to determine the amount and nature of such assistance, "taking into consideration the conditions existing in each case and in accordance with the rules and regulations made by the state relief committee".

Section 3 of the act requires that the state relief committee shall supervise the administration of old-age assistance by the county relief committee and "shall prescribe the form of, furnish and supply to the county relief committee, all blank applications, reports, affidavits and such other forms as the state relief committee may deem advisable". This section further provides:

"The state relief committee shall make rules and regulations necessary for carrying out the provisions of this act to the end that old-age assistance may be administered uniformly throughout the state so far as practicable, having regard for the varying costs of living in different parts of the state. Such rules and regulations made by the state relief committee shall be binding on the county relief committees."

Section 5 makes it mandatory that the county relief committee upon receiving application for old-age assistance shall cause an investigation to be made to ascertain the facts concerning the same.

Section 6 requires the county relief committee upon completion of the investigation to decide whether the applicant is eligible and entitled to receive old-age assistance, and to determine the amount thereof to be paid those entitled to assistance, the manner of paying or providing such relief, and the date on which such assistance shall begin. Section 6 also provides that the county relief committee on making an investigation shall make an award which shall remain in full force and effect until modified or vacated, and that "any one aggrieved by such decision either in granting or denying the application" may, within 30 days, appeal to the state relief committee. The latter committee is then required to make the final decision.

Section 9 of the act is as follows:

"The state relief committee hereby is designated as the state agency to carry out any plan or regulation, and to prescribe and enforce rules and regulations made or approved by the United States government or any federal agency or federal administrator, for the purpose of carrying out any of the provisions of any federal law or any rule or regulation for old-age assistance and to do all things necessary or required in coordinating and cooperating with the federal government or any of its agencies in carrying out and administering the provisions of this act."

Section 15 requires the county relief committees to make such reports to the state relief committee as the latter may request, and further provides that the state relief committee "shall make such reports in such detail as shall be required of it by the governor of the state or by the United States government".

Section 24 requires that an estimate of the amount of revenue necessary to be raised by each county for old-age assistance shall, by its county court, be included in its annual budget, and that such county court shall levy a tax sufficient to raise the county's estimated share of old-age assistance.

By section 25 the sum of $1,000,000 is appropriated "for the uses of the state relief committee and purposes of administration" of the provisions of the act. "Such funds", it is therein specified, "together with federal funds, made available for old-age assistance, shall be allocated by the state relief committee to the county relief committees according to their approved requirements on the basis of the federal government paying fifty per cent, the state twenty-five per cent and the county twenty-five per cent in granting and administering old-age assistance." The secretary of state is authorized to audit all duly approved claims "incurred in pursuance of law and the foregoing appropriation" and to draw his warrant on the state treasurer in payment of such claims.

The first part of section 26 reads thus: "All applications for old-age assistance shall be submitted to the state relief committee by the county relief committees, and the state committee shall pass upon each such application and approve it in such amount as is consistent with the available funds and evidence of need."

Section 27 provides in part as follows: "It hereby is declared to be the public policy of the state to cooperate and coordinate with the United States government and its established or created agencies in providing for and administering the laws of the federal

and state governments having for their purpose old-age assistance for residents of this state, and for that purpose and to that end this law is enacted."

The question here submitted for solution is not without difficulty. At the time of the enactment of chapter 407, *supra,* the 1935 legislative assembly was expecting federal legislation relating to social security, but did not know and could not foresee exactly the nature or extent of congressional enactment on that subject. From the wording of that chapter it is evident that the legislature had been advised of the substance of proposed federal legislation. The state was embarrassed in attempting to find sources of revenue which would provide more than a mere pittance to those entitled to old-age assistance, and was anxious to meet whatever conditions might be attached to the aid expected to be furnished by the federal government. Had the federal legislation been enacted prior to the passage of the state law now known as chapter 407, the provisions of the latter act would undoubtedly have been more definite and specific.

By the provisions of both chapters 407 and 55 of the general and special legislative sessions, respectively, it is plain that the state relief committee is charged with the duty of cooperating with the federal government in rendering financial assistance to the aged. The federal funds are to be turned over to the state and the state is charged with the supervision of the expenditure of those funds as well as its own. Federal moneys provided by the social security act have now become available, and the interpretation of our chapter 407, which by its terms is to take effect when such funds are available, has thus become of immediate importance.

There is no specific provision requiring those in charge of the administration of county affairs to turn over to the county relief committee the funds raised by the county; nor is there any definite provision of the law to the effect that these latter funds are available to the county relief committee or to be expended by it.

The state relief committee was given authority to make final decisions as to those entitled to assistance. To this committee was entrusted the duty of seeing that the law should be administered uniformly throughout the state and to adjust payments to the funds available and to the needs of individual cases. In order to effectuate these objects the state relief committee was given power to make rules and regulations to carry out the purposes of the law.

■ It is our opinion that the rules and regulations which have been prescribed by the state relief committee, as referred to in the alternative writ, were within the power of that committee to make and prescribe; that such rules and regulations are reasonable; and that the disbursement of federal, state and county funds through a single agency such as the state relief committee was contemplated by chapters 407 and 55, if such should be the method provided by the state relief committee, rather than through the counties separately. It can not be questioned that distribution of old-age funds can be managed much more effectively, uniformly and with less expense through one central agency than through 36 independent agencies, whether the latter attempt to make disbursements independently or in conjunction with the central state agency. Furthermore, the federal enactment and state acts impose upon the state relief committee the duty of making

reports to the general state government and to the federal government and make the state relief committee responsible for carrying out within the state the provisions of both federal and state enactments.

■ A further contention of the defendants is that the alternative writ does not state that Marion county has provided funds to pay the warrant, in the event that the same is ordered to be issued, and that therefore the demurrer should be sustained. Section 24 of chapter 407, *supra*, as already pointed out, makes it mandatory upon the county court to include in its annual budget a sufficient sum to meet the county's share of the cost of old-age assistance and to raise such funds by making a proper levy. This contention is untenable, for the reason that the alternative writ does not command the payment of money, but the issuance of a warrant, which is not dependent upon the question of whether or not there are sufficient funds available to pay such warrant after it has been issued.

The demurrer to the alternative writ is overruled and a peremptory writ ordered forthwith to be issued.