Argued February 25; modified March 10, 1947

# MULTNOMAH COUNTY *v.* LUIHN ET AL.

(178 P. (2d) 159)

*Rex Kimmell,* Assistant Attorney General, of Salem (with George Neuner, Attorney General, and Catharine Carson Barsch, Assistant Attorney General, both of Salem, on brief), for appellants.

*Frank S. Sever* and *Lamar Tooze,* both of Portland (with John B. McCourt, District Attorney, and Stanley Jones, Deputy District Attorney, both of Portland, on brief), for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

HAY, J.

This suit was instituted by Multnomah County, a public corporation and political subdivision of the State of Oregon, for itself and in behalf of other counties of the state similarly situated, against the defendants, who comprise the State Public Welfare Commission. The plaintiff seeks a declaratory judgment defining in certain respects the powers, obligations and liabilities of counties, on the one hand, and

of the State Public Welfare Commission and the County Public Welfare Commissions, on the other, under the provisions of portions of the state laws codified under the title of State Welfare and Institutions Code (specifically, sections 126-101 to 126-444, inclusive, and 126-601 to 126-626, inclusive, O. C. L. A.)

Multnomah County will be referred to herein as "the county", the State Public Welfare Commission as "the state welfare commission", and Multnomah County Public Welfare Commission as "the county welfare commission".

Other terms used herein are defined as follows: "Public assistance" means all types of public aid administered by or under the supervision of the state welfare commission. "Special aid" refers to and includes old-age assistance, aid to dependent children, and aid to the needy blind. "Old-age assistance" means public aid provided, under the provisions of sections 301, et seq., chapter 7, title 42, U. S. C. A., and sections 126-601 to 126-626, inclusive, O. C. L. A., as amended, to certain persons who have attained the age of sixty-five years. "Aid to dependent children" means public aid provided, under the provisions of sections 601, et seq., chapter 7, title 42 U. S. C. A., and sections 126-301 to 126-312, inclusive, O. C. L. A., to certain children under the age of sixteen years. "Aid to the needy blind" means public aid provided, under the provisions of sections 1201, et seq., chapter 7, title 42, U. S. C. A., and sections 126-401 to 126-423, inclusive, O. C. L. A., to certain blind persons or persons with defective vision. "General assistance" means public aid provided to needy persons not qualified under the law to receive assistance under any of the three forms of special aid above mentioned. "County

court" and "board of county commissioners" may be regarded as interchangeable terms, and mean the governing body of any county.

Two grounds of controversy have arisen between the parties. Under the first, the county contends that its governing body, the board of county commissioners, is not required to include in its annual budget, as the county's proportion of the total cost of public assistance, such sums as the state welfare commission may direct, but, on the contrary, has discretion in the premises, and may take into consideration, in determining what sums it shall budget for such purposes, the availability of funds, the necessity of providing moneys to meet other requirements of county government, and the limitations imposed by section 11, Article XI, Oregon Constitution. The state welfare commission, for its part, maintains that its estimate of the amount required to pay the county's share of expenditures for public assistance constitutes a proper and mandatory item of county expense, which the governing body of the county is obliged to include in the county budget and for which it must levy a sufficient tax.

In the second controversy, the county contends that it may require the state welfare commission to reimburse it for the cost of hospitalization and of domiciliary care of persons receiving old-age assistance, aid to the needy blind, and aid to dependent children (i. e., special aids), when such persons have been certified by the commission or its agencies to county hospitals or other county institutions for treatment or maintenance. The commission contends (1) that it has no authority to furnish financial aid in the form of old-age assistance, aid to dependent children, or aid to

the needy blind to any inmate of a county hospital, county farm, or other county institution; (2) that it has no authority to pay the county the cost of domiciliary care or hospital treatment in its institutions at a greater rate per person so cared for than it would be required to pay for the same care and treatment in private homes or private hospitals in the county; and (3) that it has no authority to pay the county any sum whatever in respect of aid and care in county institutions of persons eligible for general assistance, except as allowed by law as an offset against contributions required to be made by the county for general assistance purposes.

After a hearing, the trial court made a declaratory judgment substantially in accordance with the contentions of the county. The state welfare commission appeals.

■ In 1935, the Congress enacted a series of measures, collectively called the Social Security Act (chapter 7, title 42, U. S. C. A.), by the terms of which the federal government undertook to make, to such of the states as should adopt administrative plans complying with federal standards, grants-in-aid of state programs of certain types of public assistance, including old-age assistance, aid to the needy blind, and aid to dependent children, but not including general assistance. The state plan must be of state-wide application, must be administered by a single state agency, and must be approved by the appropriate federal authority. Sections 302, 602 and 1202, title 42, U. S. C. A. The Oregon legislation has apparently met these requirements. The state-wide administrative plan is mandatory upon the counties and may not be varied by them. *Ladd and Bush v. Siegmund,* 153 Or. 471, 482, 57 P. (2d) 395;

*Fox v. Board for Louisville & Jefferson County Children's Home*, 244 Ky. 1, 50 S.W. (2d) 67, 69-71; *St. Hedwig's Industrial School for Girls v. Cook County*, 289 Ill. 432, 124 N.E. 629, 632.

The state welfare commission asserts that the fallacy of the county's position lies in the assumption that the legislature intended to commit the state to participation in the federal social security plan, relying upon the voluntary participation and cooperation of the counties for the furnishing of a considerable portion of the state's required contribution thereto, which assumption, the commission says, is erroneous.

The state welfare commission consists of seven members, who are appointed by the governor. Section 126-102, O. C. L. A. The county welfare commissions consist of seven members. Three of these are the members of the county court or board of county commissioners. The other four are appointed by the governor.

■ The law defining the powers and duties of the state welfare commission (section 126-103, O. C. L. A., as amended by chapter 138, Oregon Laws 1941) requires the commission, among other things, to serve as the state agency in the administration and supervision of the administration of all public assistance programs; to adopt state-wide uniform standards for all public assistance programs; to effect uniform observance of such standards throughout the state; and to promulgate and enforce such rules and regulations as are necessary to assure full local compliance with the terms of federal and state laws. These requirements may be regarded as a legislative declaration of intention to place the state in position to take advantage of the benefits tendered under the federal

act, and the state statute should be construed in relation to the purposes and objectives of that act. *Ladd and Bush v. Siegmund,* supra (153 Or. at 481) ; *Morgan v. Dept. of Social Security,* 14 Wash. (2d) 156, 127 P. (2d) 686, 694; *State ex rel. Mitchell v. Townsend,* 161 Kan. 672, 171 P. (2d) 651, 654; *Matcovich v. Anglim,* (C. C. A. 9th) 134 F. (2d) 834, 836.

The county welfare commission is an agency of the state welfare commission. Upon it is imposed the duty of determining the eligibility of applicants for public assistance, and of fixing the amount of assistance to be furnished in each case. Awards of assistance remain effective until modified or vacated. Sections 126-105, 126-106, 126-303, 126-308, 126-409, 126-410, 126-601 (as amended by chapter 224, Oregon Laws 1945), 126-605, O. C. L. A. When the amount of special aid awards has been fixed, it cannot be altered except in the manner provided by state law. Sections 126-309, 126-413, 126-414, 126-417, 126-606, 126-609, 126-610, 126-611, O. C. L. A.; sections 302, 602 and 1202, title 42, U. S. C. A.

■ It is argued that the counties may not take any action which would tend to vary the statutory plan whereby the cost of assistance is intended to be divided between the state and the counties, as such action would be contrary to sections 302 (a), 602 and 1202, title. 42, U. S. C. A., and might result in suspension or withdrawal of the federal grant. In our opinion, however, this argument is untenable, as the sections cited have reference only to *administration* of public assistance under approved state plans, and, while requiring participation by the states upon a matching basis, impose no obligations upon them with reference to the manner

or means whereby they shall raise the moneys for their contribution to the cooperative scheme.

Section 126-624, O. C. L. A., provides that any county, in contributing its part of the cost of old-age assistance under the act, may issue its voucher to the state welfare commission for the aggregate of such cost disbursed within the county for the current month or other required accounting period, and may pay the full amount thereof to the commission by warrant. In *Ladd and Bush v. Siegmund*, supra, the opinion contains dictum to the effect that the above section of the code (cited as section 24, chapter 407, Oregon Laws 1935) made it mandatory upon the county court to include in its annual budget a sum sufficient to meet the county's share of the cost of old-age assistance, and to raise such sum by making a proper levy. Under the law as it then stood, the county relief committee (predecessor of the county welfare commission) and the county court of Marion County had certified to the state relief committee (predecessor of the state welfare commission) a list of persons in the county eligible to receive old-age assistance, with a statement of the amounts to be received by each. The state relief committee approved such list, and paid to the persons named therein the respective amounts allocated to them. The state relief committee then rendered to the county court a statement demanding, under the law, reimbursement of one-fourth of the aggregate of such payments, which was refused. The claim was assigned by the commission to the plaintiffs, who instituted in this court an original proceeding in mandamus against the county court and county clerk, requiring them to issue a county warrant in payment thereof. On demurrer to the alternative writ, the defendants con-

tended, inter alia, that the writ was insufficient, in that it failed to state that the county had provided funds to pay the warrant, if one were ordered to be issued. This argument was rejected by the court, which held that the alternative writ did not command the payment of money, but only the issuance of a warrant, the propriety of the issuance of which was a matter not dependent upon the question of whether or not there were sufficient funds available to pay it after it had been issued. The questions of the authority of the state relief committee to determine the amount to be contributed by the county as its contribution to old-age assistance funds, or of whether or not the county court had discretion respecting what amount it should budget and raise by taxation for such purpose, do not appear to have been raised by the pleadings, and were not passed upon.

The law provides that the state welfare commission shall pay, from state funds, not less than one-half the cost of general assistance, and that the counties, from county funds, shall pay not more than one-half of such cost. (The actual proportion which the counties are required to contribute in any particular year appears to be determined by order of the state welfare commission.) Exclusive of federal aid, the cost of aid to dependent children, aid to the needy blind, and old-age assistance is to be borne in the proportions of sixty per cent by the state and forty per cent by the counties. Sections 126-311, 126-421, 126-625, O. C. L. A. In the year following the decision of this court in *Ladd and Bush v. Siegmund,* supra (153 Or. 471, 57 P. (2d) 395), the legislature passed chapter 462, Laws 1939 (section 126-906, O. C. L. A.) reading as follows:

"Each county in the state of Oregon hereby is

authorized, empowered and directed annually to include in the county budget an estimated amount of the contribution required in such county for assistance to needy persons and their dependents, old-age assistance, assistance to needy blind persons and assistance to dependent children, and to levy and collect a tax upon all the taxable property in the county sufficient in amount to defray the county's estimated cost of such assistance.''

It is insisted that the adoption of this act implied legislative approval of this court's dictum in *Ladd and Bush v. Siegmund,* supra, to the effect that the law imposed a mandatory duty upon county courts to include in their budgets an estimate of the amount of the county's required contribution toward public assistance, based upon the percentages above mentioned. Counsel for the state welfare commission, in oral argument, stated that he relied chiefly upon section 126-906, O. C. L. A., as authority in this connection.

The board of county commissioners is, under the law, the levying board of the county. Section 110-1202 (b), O. C. L. A. It is required ''To estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, together with the rate required by law for any other purpose and cause the same to be placed in the hands of the proper officer for collection; * * *''. Section 93-302 (7), O. C. L. A., as amended by chapter 399, Oregon Laws 1945. By the local budget law (sections 110-1201 to 110-1215, O. C. L. A., as amended by chapter 356, Oregon Laws 1941, chapters 73 and 393, Oregon Laws 1943, and chapter 319, Oregon Laws 1945), it is provided that it shall be unlawful for any municipal corporation to levy in any year any tax upon property, unless an estimate shall have first been made of the

total amount of money proposed to be expended by the municipal corporation for all purposes during the fiscal year next ensuing, and such estimate has been published and opportunity for full and complete discussion thereof by all interested persons has been afforded in the manner provided in the act, or, in the case of counties having 100,000 inhabitants or more, the budget has been submitted to and reviewed by a tax supervising and conservation commission. The term "municipal corporation" includes a county.

■ The board of county commissioners believes that to place upon section 126-906, O. C. L. A., the construction contended for by the state welfare commission would deprive the board of its right and duty to exercise discretion as to the amount to be budgeted by the county for public assistance. In this connection, they call attention to the fact that section 126-906, O. C. L. A., makes no reference either to the county welfare commission or to the state welfare commission, either expressly or impliedly, but simply directs each county in the state to include in its budget *an* estimated amount of the contribution required in such county for public assistance, not *the* estimate made by either commission. They point out further that section 126-906 was adopted by the legislature, not as an amendment to the state public welfare code, but as a separate and independent enactment. Relying upon the rule that statutes bearing upon the same subject are to be construed *in pari materia,* they say that the act which defines the powers of county courts with respect to the levying of taxes is to be construed together with the local budget law and the constitutional limitation upon the county's powers of taxation.

The state welfare commission, on the other hand,

takes the position that the local budget law "has not the inviolability or rigidity of a constitutional provision", and is not controlling here, in view of the fact that the legislature has conferred upon the commission the power to make an estimate of the amount of moneys required for public assistance purposes and to require the counties to budget and to raise by levy of a property tax the amount of their required contribution thereto.

■ It should be evident that the state welfare commission and the county welfare commissions are merely administrative departments of the state government. The power to tax is a legislative power, and cannot be delegated to an administrative body. It is true that counties are political subdivisions of the state and, if section 126-906, O. C. L. A., may be construed as, in effect, a levy by the legislature itself, imposing upon the counties a mandatory duty to include in their annual budgets the amount of their respective proportions thereof, then the contention of the state welfare commission must be sustained. We think, however, that the section cannot be construed as being a levy by the legislature. The amounts required for public assistance purposes are determined from time to time by the state welfare commission. The commission is given authority to make rules and regulations, and, through its agencies, to expend from the funds provided by the state under the act and by the federal government such sums as it may determine to be necessary for public assistance purposes in the various counties of the state. We have not found any requirement of law which directs the state welfare commission to submit a budget or estimate of its requirements for any year to the state legislature for approval, although, as a matter of fact, it does so. So far as the law is concerned, the

commission simply makes its own estimate. Funds for the state's contribution to these purposes have been derived in the main from revenues of the State Liquor Commission. It appears that the contribution of any county to the welfare fund is to be computed by applying to the commission's estimate of the amount required for special aid purposes in that county the percentage fixed by law, and to its estimate of the amount required for general assistance the proportion determined by the commission.

■ The power of taxation, as we have said, is generally considered to be essentially a legislative function. 51 Am. Jur., Taxation, section 42. The legislature may delegate its legislative authority, in this connection, to municipal corporations, for the purpose of carrying out the ends for which such corporations, as political subdivisions of the state, are organized. Cooley, Taxation, 4 ed., section 75; *Zoercher v. Alger,* 202 Ind. 214, 172 N. E. 186, 70 A. L. R. 1232, 1241. There are, however, circumstances under which there may be delegated to an administrative officer, board or tribunal some aspects of the taxing process, if, in making such delegation, the legislature retains sufficient and proper control over those aspects which are not delegable, and if a sufficient guide or standard is laid down by the legislature for the guidance of the administrative officials. 51 Am. Jur., Taxation, sections 144 and 148. Having made a law, the legislature may delegate to some administrative body the power to determine the existence of a state of facts upon which the operation of the law depends. *Van Winkle v. Fred Meyer, Inc.,* 151 Or. 455, 462, 49 P. (2d) 1140; *Wasco County P. U. D. v. Kelly,* 171 Or. 691, 701, 137 P. (2d) 295. The determination of the existence of

such a state of facts is an administrative and not a legislative function. *Wasco County P. U. D. v. Kelly,* supra (p. 701); *State ex rel. Mitchell v. Townsend,* supra (161 Kan. 672, 171 P. (2d) 651, 656, 657).

■ The state welfare commission claims that the law has delegated to it such a fact-finding function. Assuming, without deciding, that such a function may properly be delegated to an appointed administrative body, to the detriment of powers theretofore lawfully delegated to the elected governing bodies of the counties (cf. *City of Portland v. Welch,* 154 Or. 286, 302, 305, 59 P. (2d) 228), we do not find anywhere in the law any yardstick or standard whatever for the guidance of the commission in the performance of the mandatory authority which it claims. Need alone (while it may be morally very persuasive) is not in itself absolutely determinative of the duty to tax. Taxation proceeds "upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; and that for those means it has the right to compel all citizens and property within its limits to contribute". 51 Am. Jur., Taxation, section 9, note 12. While it may be presumed that the state legislature might make a direct and definite levy of taxes for a public purpose, and impose upon the counties a mandate to collect such taxes, in the levy of non-mandatory taxes the governing bodies of the counties may be depended upon to exercise discretion as to how much to raise for each necessary public purpose, and will educate their discretion by a balancing of many factors, including the amount of money which it is lawfully permissible to raise and the relative urgency and public benefit of the various objects sought to be provided for. The wisdom of making the levy

of taxes a legislative function is apparent, and the danger to the commonwealth of permitting such a vast power to be lodged in an administrative officer or body is, or should be, manifest. The fact-finding function which the state welfare commission claims to have been vested in it apparently consists in an unrestricted determination of the gross amount which it deems to be necessary to be expended for public assistance purposes throughout the state and in the various counties. Such function, in our opinion, must be regarded as a mere demand for funds rather than as a finding of facts,—as, in fact, a levying of taxes. The amount of money which the counties are required to raise for public assistance purposes would be made to depend upon the fiat of the state welfare commission, rather than upon the discreet judgment of the duly elected county officers to whom, as the legislative bodies of the counties, the power to levy taxes for county purposes has been constitutionally delegated.

■ We are unable to find in section 126-906, O. C. L. A., upon which the state welfare commission relies, the authority which it claims. That section is clear and unambiguous. As has been stated, it simply directs each county to include in its annual budget ''an estimated amount of the contribution required in such county for assistance to needy persons and their dependents, old-age assistance, assistance to needy blind persons and assistance to dependent children'', and to levy and collect a property tax therefor. It contains nothing to indicate a legislative intention that such estimate should be exempted from the provisions of the local budget law or from the limitations imposed by section 11, Art. XI of the state constitution. The county budget is required to include itemized estimates

of all moneys which the county proposes to expend within the fiscal year next ensuing (sections 110-1201, et seq., O. C. L. A.) and the estimate required to be budgeted by section 126-906, O. C. L. A., is not different from any other required estimate. As is pointed out by the board of county commissioners, under the construction of that section contended for by the state welfare commission, that body might estimate its requirements for any year at such an enormous figure as to exhaust the entire tax-levying power of the county, with destructive effects upon other and no doubt equally important functions of county government. We cannot give our assent to the theory that such an extraordinary, unguided and unrestricted power may be vested in any administrative body. Nor can we concede that, either by the direct language of section 126-906, O. C. L. A., or by any implication that may be thought to arise therefrom, the board of county commissioners was divested of its authority to exercise discretion in making its estimate of the amount of money necessary to be raised by taxation for public assistance purposes. The legislative formula fixed percentages of the gross amount required for special aid which are to be charged against the respective counties, and the proportion, at not more than "one-half of the cost", which is to be the counties' contribution toward general assistance within the counties, but the determination of the respective amounts to which such rates are to be applied is left to the unguided judgment of the state welfare commission.

To sustain the constitutionality of the law, it is necessary to assume, and we do assume. that the legislature intended that the power to estimate and levy the county's contribution for public assistance purposes should continue to be exercised. as formerly,

by the board of county commissioners. If the law indeed vested in the state welfare commission the power which it appears to claim, then it delegated to it a legislative function, and we should be obliged to construe it as unconstitutional. *City of Portland v. Welch,* supra (154 Or. 286, 305, 59 P. (2d) 228; *Winslow v. Fleischner,* 112 Or. 23, 28, 29, 228 P. 101, 34 A. L. R. 826; *Stoppenback v. Multnomah County,* 71 Or. 493, 505, 142 P. 832; *Van Cleve v. Passaic Valley Sewerage Commrs.,* 71 N. J. Law 574, 583, 60 A. 214, 108 Am. St. Rep. 754; *People ex rel. Carr v. Pittsburgh etc. Co.,* 316 Ill. 410, 147 N. E. 492, 493; Cooley, Taxation, 4 ed., sections 74, 81, 93. The law is declared to be intended to put into effect a cooperative endeavor between the federal government, the state and the counties. Sections 126-103, 126-117, O. C. L. A. Counties should not be required to "cooperate" to the extent of emasculating their other governmental functions, but should be expected and required to provide by taxation such contributions toward public assistance funds as, in view of other county requirements and commitments, constitutional limitations and budgeting restrictions, in the judgment of their governing boards, acting in good faith and with sound discretion, appears to be proper.

Two cases cited by the state welfare commission are distinguishable upon their facts from the case at bar. *Fox v. Board for Louisville & Jefferson County Children's Home,* supra (244 Ky. 1, 50 S. W. (2d) 67) involved the construction of a legislative taxation formula under which the defendant, a municipal corporation, was required to levy and collect, for general public purposes, a tax of not less than 3¼ cents nor more than five cents on each $100 of taxable property. It was held to be mandatory. upon the defendant to levy and collect the tax at the minimum tax rate

imposed by the law. *St. Hedwig's Industrial School for Girls v. Cook County,* supra (289 Ill. 432, 124 N. E. 629) involved the construction of a statute which required any county from which dependent girls were committed to an industrial school to pay to the school $15 per month for each girl so committed. It was held that the general assembly might impose taxes, local in character, against a municipal corporation or the inhabitants thereof, if required for the general good of the state; that counties are but local subdivisions of the state; that the maintenance and care of dependent children falls within the class of duties relating to the general welfare and security of the state, which a municipal corporation may be compelled by the general assembly to perform, and that the sum required to be paid was a definite and fixed monthly charge which the county board was bound to make provision for and had no discretion to vary.

The importance of the matter under consideration is emphasized by certain admitted facts. Expenditures for public assistance purposes in Multnomah County have of late years attained tremendous proportions. The maximum amount which the county could legally have raised by taxation for the fiscal year 1946-1947 was $6,229,613.18, and that was the exact amount of the county's budget for that year. The budget included for public assistance purposes an item of $850,107.96, whereas the amount of the county's contribution for such purposes, as demanded by the state welfare commission, was $1,173,831.90.

Upon the second ground of controversy, the trial court's judgment declared:

"That any county may require the State Public Welfare Commission to pay the cost of hospitaliza-

tion and domiciliary care for persons receiving old age assistance, aid to the needy blind and aid to dependent children and treated in county hospitals and cared for in county institutions when such persons are certified to such hospitals or such institutions by the State Public Welfare Commission or its agencies.''

The complaint alleged that the state welfare commission, through its agency, the county welfare commission, had from time to time caused to be certified to the county hospital and county poor-farm certain persons, residents of the county, who were recipients of special aids, and had declined to remunerate the county for such treatment. There was no sufficient proof, however, that the commission had ever caused any person to be certified to either county institution for treatment or care.

The state welfare commission says that there is no authority of law requiring it to pay for hospitalization or domiciliary care furnished in county institutions to persons receiving special aid.

Section 126-110, O. C. L. A., which fixes the limits within which the state and the counties respectively shall bear the expense of general assistance, contains the following proviso:

''* * * provided, however, that the expenditures made by the counties for the care of indigent persons in poor farms and county hospitals and for the relief of indigent veterans and their dependents shall be taken into account and offset against the counties' contributions for general assistance purposes. * * *''

The county does not claim to be entitled to compensation for the hospitalization of general assistance cases.

Sections 126-404 and 126-608, O. C. L. A., respec-

tively provide that no person receiving aid to the blind or old-age assistance shall at the same time receive any other assistance from the state or any political subdivision thereof, except for medical, surgical or hospital care and assistance, which care and assistance shall be provided in accordance with the rules and regulations of the state welfare commission.

In that connection, the state welfare commission has ruled that, in determining the amount of assistance which any applicant for relief shall receive on the basis of need, the county welfare commission shall take into account the income, resources and maintenance currently available for the use of the applicant, from whatever source derived. Art. IV, section 4 (a), Rules and Regulations for the Administration and Supervision of the Public Assistance Programs, February, 1946; sections 302 (a), 602 (a) and 1202 (a), title 42, U. S. C. A.

The rules of the state welfare commission permit recipients of old-age assistance or aid to the blind to receive (a) medical, surgical, nursing or hospital care, and (b) aid for emergent unmet needs which were unforeseen and unpredictable at the time the assistance payment for the current month accrued. Rules, Art. IV, section 3 (b). Provision for medical, surgical and nursing care is made in accordance with the medical plan of the commission. Rules, Art. IV, section 9. The rules, moreover, provide that, while public funds may not be used by the commission to provide care for persons who are at the time of receiving assistance inmates of any public institution, any such person may nevertheless enter a public institution for the purpose of receiving temporary medical, surgical or nursing care, without rendering himself ineligible for public assist-

ance, (in other words, without becoming an "inmate"), unless it is obvious at the time of his admission that his condition will necessitate prolonged or permanent care. Payments, in such cases, "should not usually continue after a three-month period". Rules, Art. I, section 3 (b). Payment for medical care, including nursing home and hospital care, is to be made directly to the "vendor" thereof. Rules, Art. V, section 12.

County courts are permitted by law to establish county hospitals, where the poor of the county may be treated and cared for. Section 86-601, O. C. L. A. Pay-patients may also be admitted to such hospitals, the income thus derived being used for hospital operation and maintenance. Section 86-602, O. C. L. A. Poor-farms also may be established by county courts, under authority of section 126-202, O. C. L. A., which permits the providing of workhouses "for the accommodation and employment of such paupers as may from time to time become a county charge". County courts may expend, for the relief of needy persons, old-age assistance, aid to dependent, homeless, neglected or abused children, foundlings, orphans, wayward children, or children in need of correctional institutional care, the whole or any part of the unexpended balance of any funds budgeted by the county for any purpose whatever. Section 126-201, O. C. L. A., as amended by chapter 418, Oregon Laws 1941. They are also authorized and empowered to provide for the maintenance and employment of county or transient paupers. Section 93-302 (8), O. C. L. A., as amended by chapter 399, Oregon Laws 1945.

There is no obligation at common law upon the state or its political subdivisions to furnish relief for the poor. 41 Am. Jur., Poor and Poor Laws, section

35; *People ex rel. Heydenreich v. Lyons*, 374 Ill. 557, 30 N.E. (2d) 46, 132 A.L.R. 511, 515. Where the statute makes it the duty of local authorities to provide for indigent persons, such duty is mandatory and must be strictly complied with. 48 C.J., Paupers, section 8, note 65. Under our laws, no absolute obligation to provide support or relief for poor persons is imposed upon county courts; they are simply "authorized and empowered" to make certain provisions for such persons. The seeming inhumanity of laws which do not oblige local authorities to provide for the poor is explained by the fact that, in ancient times, matters of charity were considered to be more within the province of the church than that of the civil authorities. 41 Am. Jur., Poor and Poor Laws, section 2. We must construe the statutes as imposing no mandatory duty upon county courts to furnish relief to poor persons, but as vesting them with a measure of discretion as to whether or not, in any particular case, they will grant such relief. More especially is this true, in view of the fact that the statutes not only authorize, but "direct" the state welfare commission, in cooperation with the federal government and with departments, agencies and counties of the state, to provide general assistance for the needy, and to administer and supervise the administration of all public assistance programs (section 126-103, O. C. L. A., as amended by chapter 138, Oregon Laws 1941), and "direct" the county welfare commissions to administer public assistance within the counties. Section 126-105, O. C. L. A.

■ It is asserted that it is the duty of the county welfare commission, in determining the amount of any award of public assistance, to take into account other resources currently available to the applicant or for

his use, from whatever source derived. Rules, Art. IV, sections 1 and 4 (a); sections 302 (a), 602 (a), and 1202 (a), title 42, U. S. C. A.; sections 126-106, 126-303, 126-405 and 126-604, O. C. L. A. It would seem that what the legislature had in mind, in referring, in the cited sections, to "the income, resources and maintenance available to the individual from whatever source derived", did not include hospitalization facilities which Multnomah County, in the discretion of its board of county commissioners, might or might not make available to an applicant for public assistance. The argument, indeed, has a tendency to backfire. The county authorities, in exercising their discretion as to whether or not to admit an applicant into the county hospital for treatment or care, might well take into consideration the facts that administration of nearly all forms of public assistance has been vested in the state and county welfare commissions; that, in counties which do not maintain county hospitals or poor-farms, the state welfare commission authorizes payment, to private hospitals or other private agencies, for temporary hospital and medical care and treatment for periods not usually exceeding three months, which payments range from $65 to $85 per month for ambulatory patients, and from $85 to $95 per month for bed patients; and that, while, under the state welfare commission's rules, counties which do not maintain hospitals or poor-farms contribute only fifteen per cent to the commission for general welfare purposes, and have no further liability in that regard, for the fiscal year 1945-1946, Multnomah County's expense in operating its hospital and poor-farm exceeded fifteen per cent of the total cost of general assistance expended by the state agencies within the county by the sum of

$370,386.89. There would appear to be no reason why the state and county welfare commissions should not pay the county for temporary hospitalization furnished to recipients of special aid, at rates commensurate with those paid for similar services in counties which do not provide institutional care. The maintenance of state-wide uniform standards would seem to require such payment, and the withholding thereof, we think, works to the disadvantage of Multnomah County in comparison with counties which do not maintain hospitals and poor-farms.

The state welfare commission concedes that grants of special aid are regularly made, for periods not exceeding twelve weeks, to persons who are patients in hospitals (presumably, private hospitals), but insists that such grants maintain the homes and service facilities of such assistance recipients and afford sustenance to their families "in cases of shared grants". We are not, however, considering, in this connection, cases of shared grants, but rather cases in which payment is made to private hospitals or private persons for care furnished to recipients of special aid.

■ We have commented that the evidence failed to prove that any persons had been certified to the county hospital or poor-farm for treatment or care. The rules provide that the amount of assistance which any applicant shall receive shall be determined by the county public welfare commission, subject to approval by the state welfare commission. Rules, Art. IV, sections 4 and 10. Moreover, it is implied that such determination shall be made in advance of any aid being furnished. Previous investigation, to determine the eligibility of the applicant, is required. Sections 126-307,

126-308, 126-405, 126-409, 126-410, 126-604, 126-605, O. C. L. A.; Rules, Art. III, sections 1 and 2. In our opinion, neither the state welfare commission nor the county welfare commission is liable to the county for hospitalization, treatment or care furnished to recipients of special aid, unless, with the approval of the state welfare commission, previous agreement that the county shall be remunerated in such cases has been effected between the county welfare commission and the county. 48 C.J., Paupers, section 247. The method of certification may be provided for by rule of the state welfare commission.

The judgment of the trial court will be modified accordingly. As so modified, the judgment is affirmed. No costs will be allowed to any party.