Argued February 17; peremptory writ ordered March 4, 1949

# STATE ex rel., STATE PUBLIC WELFARE COMMISSION v. COUNTY COURT OF MALHEUR COUNTY

203 P. 2d 307

*Rex Kimmell,* Deputy Attorney General, argued the cause for petitioner. With him on the brief was George Neuner, Attorney General, both of Salem.

*Charles W. Swan,* District Attorney for Malheur County, and *Robert D. Lytle,* both of Vale, argued the cause and filed a brief for defendant.

Before Lusk, Chief Justice, and Brand, Belt, Rossman, Kelly, and Bailey, Justices.

BRAND, J.

A petition for an alternative writ of mandamus was originally filed by the State Public Welfare Commission, but by order of this court the petition was so amended as to make the State of Oregon the petitioning party. It sues upon the relation of the Commission. An alternative writ issued upon the amended petition. We quote:

"WHEREAS, it manifestly appears to us by the verified petition of the relator herein:

"I

"That J. H. Luihn, Hugh G. Ball, Dr. Louis P. Gambee, Mrs. Thomas Honeyman, Bardee G. Skulason, H. H. Lake and Mrs. Lee Patterson are the duly appointed, qualified and acting members of the State Public Welfare Commission, and that J. H. Luihn is the duly elected chairman thereof. That this proceeding is initiated by the State Public Welfare Commission for the purpose of compelling local compliance by Malheur County with the federal and state laws applicable to the administration of a public assistance program in Oregon, and pursuant to the provisions of section 126-103, O. C. L. A., as amended by section 6, chapter 545, Oregon Laws 1947.

"II

"That Irwin Troxell is the county judge, and A. P. Goodell and John L. Caldwell, Jr., are commissioners, and such three persons constitute the County Court of Malheur County. As such county court the defendant has the general care and management of Malheur County funds and business and is required to estimate and determine the amount of revenue for county purposes, and to levy taxes required by law in the uniform administration of the public welfare program of this state; such duties are imposed by section 93-302, O. C. L. A., as

amended by section 1, chapter 399, Oregon Laws 1945.

"III

"That for the purpose of securing grants of federal money to assist in providing public assistance, the state of Oregon has submitted to the proper federal agency under the provisions of chapter 7, Title 42, U. S. C. A., and had approved, a state program for the administration of public assistance, and as a result the state is receiving federal grants for old-age assistance, aid to the needy blind, and aid to dependent children.

"IV

"Under the provisions of section 126-110, O. C. L. A., as amended by section 5, chapter 545, Oregon Laws 1947, and exclusive of sums of money granted or contributed by the government of the United States, as alleged in paragraph III of this writ, Malheur County is required to contribute 30 per cent of all sums required to be expended in such county for general assistance, old-age assistance, blind assistance and aid to dependent children.

"V

"On February 9, 1948, the county public welfare commission of Malheur County transmitted its findings to relator, in which it estimated the sum of $39,879.60 to be the amount required as the contribution of Malheur County for the administration of the public welfare program therein during the fiscal year beginning July 1, 1948, and ending June 30, 1949. Pursuant to the provisions of section 2, chapter 545, Oregon Laws 1947, relator reviewed the findings and estimate so transmitted to it, and after investigation of the facts, made a determination on the basis prescribed in such provision of law that the contribution of Malheur County for the administration of the public welfare program therein during such fiscal year be $43,901.00; the findings of the Malheur County public welfare commission were revised accordingly, and as so revised

and approved such findings were certified to the defendant herein on March 26, 1948.

"VI

"The defendant, County Court of Malheur County, has refused and does still refuse to include in its budget for the fiscal year 1948-1949 the amount so found and certified to it by relator.

"VII

"The defendant has notified relator that it will not levy a tax for or otherwise provide and contribute to the public assistance program in Malheur County for the year 1948-1949 any sum other than the sum of $39,879.60, and it will not issue its warrants in favor of the State Public Welfare Commission for one-quarter of the amount found and certified by relator as being required from that county on or before the first day of each calendar quarter of the ensuing fiscal year or otherwise, and will not so issue its warrants in any amount greater than one-quarter of the sum of $39,879.60.

"VIII

"Malheur County's required contribution to the cost of administration of the public welfare program therein is in the sum of $10,975.25, to be paid on or before the first days of July and October, 1948, and January and April, 1949; such County refuses to contribute such amounts and has officially notified relator that it will contribute no amount in excess of $9,969.90 on said dates or otherwise.

"IX

"Relator has no plain, speedy or adequate remedy at law.

"NOW, THEREFORE, we do command you to budget and set aside for contribution by Malheur County to the state welfare program for the fiscal year beginning July 1, 1948, and ending June 30, 1949, the total sum of $43,901.00, and we do further command you that you draw warrants of Malheur County in favor of the State Public Welfare Com-

mission on or before the first day of each calendar quarter of said fiscal year in the amount of one-fourth of such total sum, or $10,975.25, or that you show cause before this Court on the 29th day of October, 1948, at the hour of 11 A. M., why you have not done so, and that you then and there return this writ, with your certificate annexed thereto, of having done as hereby commanded, or showing the cause of your omission thereof.''

To the amended writ the respondent county court demurred upon the following grounds:

"I On the ground that plaintiff has no legal capacity to sue.

"II On the ground that the Writ fails to state a cause against the defendant for the following reasons:

"a. Chapter 545 Oregon Laws 1947 upon which plaintiff relies contravenes Section 32, Article I; Section 1, Article III and Section 1, Article IV of the Constitution of Oregon on the ground that said action attempts to delegate to an appointive administrative commission the legislative power of (1) Directing the levy of a tax; (2) determining the amount of tax to be imposed; and (3) determining the rate of millage.

"b. Said Chapter 545 upon which plaintiff relies contravenes Section 32, Article I of the Constitution of Oregon in that it delegates to an appointive administrative commission the power to exercise the discretionary function of determining the amount and rate of taxation to be levied, now exercised under constitutional sanction by County Courts or Boards of County Commissioners.

"c. Said Chapter 545 delegates to such appointive administrative commission the power to legislate by deducting items from or adding items to the budget (within the statutory limits)

thereby changing the amount and rate of the tax without guide or direction from the Legislature.

"d. Chapter 545 Oregon Laws upon which plaintiff relies contravenes Section 32, Article I and Section 1, Article IX of the Constitution of Oregon in that it provides for a state tax which is not uniform throughout the state, and permits a different rate of taxation in each of the several counties of the state; the amount of expenditure authorized by said appointive commission is the measure of the amount of the tax and the rate of taxation in each of the several counties of the state.

"e. Said Chapter 545 contravenes Subdivision 10, Section 23 of Article IV of the Constitution of Oregon for the reason that it is special or local in character in that it provides or permits a different rate of taxation in each of the several counties of the state.

"f. Said Chapter 545 is void because of uncertainty in that by reading the Act in its entirety the amount of the tax or the rate of taxation cannot be determined, and for the further reason that the several provisions of the Act are so contradictory that all of the provisions of the same cannot be made operative and the intent of the Legislature cannot be determined.

"g. Said Chapter 545 contravenes Section 1, Article IV of the Constitution of Oregon, in that it requires the appointive administrative commission to legislate and to enact and adopt rules and regulations which constitute the basis for determining the amount of the tax to be imposed and the amount and the rate of taxation in the several counties.

"h. For the reason that the Writ does not show a present existing right in the plaintiff, or in any other, to sue in mandamus, or in any other form, in that Sections 2 and 5 of said Chapter 545 provides the exclusive remedy for under-

payment of the defendant's proportionate con-
tribution to the State Public Welfare Commis-
sion, which Act and which sections require that
the deficiency be added to the budget of the
next or second fiscal year, and that in the mean-
while payments of full assistance to persons
entitled thereto be paid out of funds of the Fed-
eral Government and the State of Oregon avail-
able for that purpose."

The respondent argues at length in its brief that
the plaintiff, meaning the Commission, has not legal
capacity to sue. That argument becomes immaterial in
view of the amendment joining the State of Oregon as
petitioner.

■ The first ground of demurrer to the amended
writ asserts that the State of Oregon has no legal ca-
pacity to sue. The respondent has itself answered that
contention. We quote from its brief:

"The State being the real party in interest, and
the wrong being a public wrong, the state is the sole,
proper and necessary party plaintiff, on relation."
Citing cases.

We will set forth at length the portions of the statute
to which respondent specifically refers, and will sum-
marize other portions thereof:

"For the purpose of raising revenue to pay the
share of each county of the expenditures for public
assistance, the county court or board of county com-
missioners of each county shall each year levy a
tax of $4\frac{1}{2}$ mills upon the dollar of the county
assessed valuation as equalized by the state tax
commission of all taxable property within the
county. The tax levied for such purposes shall be
levied and collected by each county in the same
manner as other taxes are levied and collected by

the counties, and a sum equal to the total amount of the tax so levied, together with all other revenue accruing to the county for public assistance, shall be set aside and deposited in a special fund designated as the 'county public assistance fund' and shall be paid over to the state public welfare commission and deposited in the state treasury and disbursed therefrom in accordance with the provisions of section 3 of this act.'' Oregon Laws, 1947, ch. 545, section 1.

''In the event that the amount of money necessary to provide the proportionate contribution of any county during any fiscal year for general assistance, old-age assistance, blind assistance and aid to dependent children, as certified to the county court or board of county commissioners thereof by the state public welfare commission, may be provided by other revenues available for such purpose, together with a tax of less than the tax of $4\frac{1}{2}$ mills provided in section 1 of this act, the county court or board of county commissioners shall levy a tax in an amount sufficient, when added to all other revenues available for such purpose, to provide said certified amount, and no more, in lieu of the maximum levy required by the provisions of section 1 of this act.

''Not later than May 1 of each year, each county public welfare commission, after making an investigation, and upon the basis of the statewide standards of assistance established by the state public welfare commission and the estimated number of persons who will require assistance for the ensuing fiscal year shall find the amount of money necessary to provide the proportionate contribution of each such county for general assistance, old-age assistance, blind assistance and aid to dependent children during such fiscal year, and shall immediately transmit its findings to the state public welfare commission. The state public welfare commission shall review the findings of each county public welfare commission and shall, after investigating

the facts, and upon the basis of its statewide standards of assistance established pursuant to the federal social security act, the number of persons who will require assistance and the funds available from other sources, approve or revise and approve the same and shall certify such approved or revised and approved findings to the county court or board of county commissioners of each county, and the amount so found shall be included in the budget of each county for the ensuing fiscal year, provided that the levy therefor hereby is limited to that which will provide an amount equal to the amount of revenue that would be provided by the levy of the maximum millage specified in section 1 of this act.

"If the total of the amounts paid by any county to the state public welfare commission and deposited by it in the state treasury during any fiscal year should prove to be more or less than sufficient to pay the proportionate contributions of said county of the sums required to be expended in and for such county for general assistance, old-age assistance, blind assistance and aid to dependent children for all obligations incurred up to and including June 30 of such fiscal year, the resulting overpayment or underpayment shall be adjusted in the manner and to the extent hereinafter provided, to wit: Any such overpayment shall be returned to such county by the state public welfare commission, which hereby is authorized and directed to draw a check or checks in favor of such county for the amount of such overpayment; in the case of any county which has levied for any fiscal year a tax less than the millage specified in section 1 of this act, any underpayment shall be added to the amount found and certified by the state public welfare commission to the county court or board of county commissioners as necessary for the proportionate contributions of said county during the next or second succeeding fiscal year and shall be included in the budget and the tax rate of said county for the next or second succeeding fiscal years; provided, that in no year shall the tax levied

by any county pursuant to this act exceed the maximum millage specified in section 1 hereof." Oregon Laws, 1947, ch. 545, section 2.

Before discussing the constitutional issues presented, it is appropriate to place chapter 545, Oregon Laws of 1947 in its legislative context. That chapter is a part of the Welfare Code, O. C. L. A., Tit. 126, portions of which it amends or repeals. That code as supplemented by chapter 545 establishes a State Public Welfare Commission, O. C. L. A., § 126-102, with power to cooperate with the United States government, departments and agencies of the State of Oregon, and the counties of the state, in providing general assistance for needy persons and to receive and disburse funds from the United States government, departments or agencies of the state and counties of the state for assistance purposes. O. C. L. A., § 126-103, as amended by Oregon Laws, 1947, chapter 545, section 6. The Commission is empowered and directed to supervise the administration of all public assistance programs "and to promulgate and enforce such rules and regulations as are necessary to assure full local compliance with the terms of federal and state laws". The Commission is directed to fix statewide uniform standards for all public assistance programs and to effect uniform observance thereof throughout the state, (with certain exceptions not relevant here).

As used in the statute:

"'General Assistance' means assistance or service of any character provided to needy persons not otherwise provided for, to the extent of such need and the availability of funds, including medical, surgical and hospital care and costs of burials of needy persons.

" 'Public Assistance' means all types of assistance including old-age assistance, aid to dependent children, services for crippled children, child-welfare services, and aid to the blind, general assistance, and such other functions as may be delegated to the state public welfare commission by or in accordance with the provisions of federal and state laws." Oregon Laws, 1947, ch. 545, section 3.

The code also establishes County Public Welfare Commissions of which the members of the county court, or board of county commissioners are members. The County Commission is directed to administer public assistance "as authorized by law and subject to the supervision of and the rules and regulations made by the State Public Welfare Commission". O. C. L. A., §§ 126-104, 126-105. It is also provided that:

"* * * In establishing statewide standards for public assistance, the state public welfare commission, within the limits of available funds, shall take into consideration all basic requirements for a standard of living compatible with decency and health, including food, shelter, clothing, fuel, public utilities, medical care and other essential items, and, upon the basis of investigations of the facts shall provide budgetary guides for determining minimum costs of meeting such requirements. Rules and regulations made by the state public welfare commission shall be binding on the county public welfare departments." O. C. L. A., § 126-103, as amended by Laws 1947, ch. 545, section 6.

The Commission is required by the same section to make such reports "as may be required by the governor of the state and by the federal government or any of its agencies." The Commission is also directed to require estimates, budgets and the like from the county welfare departments. A further general standard estab-

lishing the basis on which assistance is to be given is as follows:

"General assistance shall be granted under the provisions of this act on the basis of need, taking into account the income, resources and maintenance available to the individual from whatever source derived and his necessary expenditures, and the conditions existing in each case, and in accordance with the rules and regulations of the state public welfare commission." O. C. L. A., § 126-106.

The statute in question was enacted in contemplation of the fact that the Federal government has authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes specified in U. S. C. A., Tit. 42, sections 301 to 306, "for the purpose of enabling each state to furnish financial assistance * * * to aged needy individuals". The sums available are to be used for making payments to "states which have submitted, and had approved by the Social Security Board * * * state plans for old age assistance". U. S. C. A., Tit. 42, section 301. The statewide plan for Oregon has heretofore received approval under the Federal Social Security Act and Federal funds have been received by this state in aid of the state program for old age assistance and for financial assistance to needy dependent children and needy individuals who are blind. No state is required by Federal law to submit plans, but the plan must receive the approval of the Federal Security Administrator if the state is to receive Federal aid. The Social Security Board was abolished and its functions transferred to the Federal Security Administrator by 1946 Reorg. Plan No. 2, § 4, effective July 16, 1946, 11 F. R. 7873, 60 Stat, 1095.

We shall hereafter refer to the Federal Administrator rather than to the Social Security Board.

The provisions governing the action of the Federal Administrator in granting approval to state plans are set forth in U. S. C. A., Tit. 42, section 302. The Federal Administrator may suspend payments to the state for failure to comply substantially with conditions imposed by the Federal act. The Federal Social Security Act also authorizes Federal appropriations to enable the states to furnish financial assistance to needy dependent children (U. S. C. A., Tit. 42, section 601, et seq., as amended) and needy individuals who are blind (U. S. C. A., Tit. 42, section 1201, et seq., as amended). Prior to the enactment of Oregon Laws, 1947, chapter 545, the provisions of the Oregon Public Welfare Code were construed by this court in *Multnomah County v. Luihn et al.*, 180 Or. 528, 178 P. (2d) 159. In that case the court said:

"* * * These requirements may be regarded as a legislative declaration of intention to place the state in position to take advantage of the benefits tendered under the federal act, and the state statute should be construed in relation to the purposes and objectives of that act."

It is even more clear that the 1947 act was passed in contemplation of the fact that Federal funds were available for state aid and that the intention of the legislature was to render the State of Oregon eligible to receive such aid. The receipt of Oregon's share of Federal funds is dependent upon the carrying out in substantial respects of the provisions of chapter 545, supra. The entire Oregon plan of old age assistance, assistance to the blind and to dependent children and the availability of Federal aid is therefore dependent on the validity of the statute which is challenged by the respondent. The respondent contends that Oregon

Laws, 1947, chapter 545, is in violation of the following provisions of the State Constitution:

> "No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Constitution of Oregon, Art. I, section 32.

> "The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided." Constitution of Oregon, Art. III, section 1.

> "The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say—

> "* * *

> "10. For the assessment and collection of taxes for state, county, township, or road purposes;

> "* * *" Constitution of Oregon, Art. IV, section 23.

> "The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state." Constitution of Oregon, Art. IX, section 1.

The respondent also relies upon Constitution Article IV, section 1, which need not be quoted at length. It vests the legislative authority of the state in the legislature and reserves to the people the initiative and referendum powers which it defines.

■ The respondent asserts that "it will not lend its aid to a concept of totalitarianism whereby a state

agency attempts to usurp the powers of local government by dictating the amount to be raised through local taxation." Implicit in the entire argument is this idea that the county has some inherent rights which are being invaded. The answer depends upon the relationship which exists in law between the state and the several counties. In *Mackenzie v. Douglas County*, 91 Or. 375, 178 P. 350, this court said:

> "* * * it may not be inappropriate to consider the relation of a county to the state. We think the decisions may be said to be uniform that a county is not an independent governmental entity—is not even a corporation in the same sense that municipalities are corporations. It is a quasi corporation created by legislative fiat for governmental purposes and subject to the legislative will in all matters not prohibited by some constitutional restriction."

To the same effect see *Miller v. Henry*, 62 Or. 4, 124 P. 197; *City of Pendleton v. Umatilla County*, 117 Or. 140, 241 P. 979; *School District No. 1 v. Multnomah County*, 164 Or. 336, 101 P. (2d) 408. A county is merely a political agent of the state created by law for governmental purposes, invested with legislative powers and charged with the performance of duties for the state. *Yamhill County v. Foster*, 53 Or. 124, 99 P. 286; *Schubel v. Olcott*, 60 Or. 503, 120 P. 375. Again it is said:

> "* * * Where a state by enactment, in furtherance of its governmental purposes, imposes an obligation upon a county not in conflict with the Constitution of the state, that obligation becomes one which the county must fairly meet." Mackenzie v. Douglas County, 81 Or. 442, 159 P. 625, 159 P. 1033.

The power to subject counties to the legislative will includes the power to require them to levy a tax for

specific purposes and to control the amount of such levy. Beginning in 1919 (Oregon Laws, 1919, ch. 339) and continuing until the passage of Oregon Laws, 1941, ch. 188, the legislature imposed a mandatory duty upon the various counties to levy a county road tax of not less than one nor more than ten mills for road purposes to be expended within the county levying the same. O. C. L. A., § 100-1325. In important respects, that law resembles the Oregon Welfare Code. The road funds were raised by county levy and spent within the county for purposes which were of special interest and benefit to the county, but in each case, the local levy and expenditure was a part of a statewide program, the purpose of which transcended any county purpose. In the case of the road tax, the funds were to be expended, not only upon county roads, but also in cooperation with the state upon state roads within the county, and in cooperation with the United States in accordance with a congressional act authorizing Federal aid in the construction of postroads and the like. In both instances, the imposition was by a county tax levied by the county, but required by the state, the maximum and minimum amounts of which were prescribed, and for purposes which were both local and statewide. The validity of the mandatory provision contained in O. C. L. A., § 100-1325, (the general road fund tax) was twice upheld by this court. *City of Astoria v. Cornelius et al.*, 119 Or. 264, 240 P. 233; *City of Pendleton v. Umatilla County*, supra.

■■ The respondent contends that the tax is to be levied pursuant to Oregon Laws, 1947, chapter 545, is a state tax, and that it must therefore be uniform throughout the state. Reliance is placed upon the provisions of Oregon Constitution, Article I, section 32,

and Article IX, section 1. The two sections are to be read together. The provisions of Article I, section 32 cannot be so construed. The requirement is that taxation shall be uniform "within the territorial limits of the authority levying the tax". This court has held that the rate of taxation must be equal and uniform "throughout the taxing district, whether state or local. *Yamhill County v. Foster*, supra. It follows that if a tax is equal and uniform throughout the taxing district, there is no violation of the constitutional mandate. *Johnson v. Jackson County*, 68 Or. 432, 136 P. 874. In the case of *Cook v. The Port of Portland*, 20 Or. 580, 27 P. 263, 13 L. R. A. 533, the court said:

"* * * As was said by Mr. Justice Strong, in Railroad Co. v. County of Otoe, 16 Wall. 676: 'The legislature has the undoubted power to apportion a public burden among all the taxpayers of the state, or among those of a particular section, if, in its judgment, those of a single section may reap the principal benefit from a proposed expenditure, as from the construction of a road, a bridge, an almshouse or a hospital. * * *' "

Respondent fails to distinguish between a legislative mandate requiring counties to levy a tax and the act of a county in making a levy pursuant to the mandate. As in the case of the tax for road purposes, chapter 545 expressly imposes on the county a duty to levy, but the instrumentality of government which must make the levy is the county court. The obvious purpose of the welfare code is to give aid to needy persons throughout the state on the basis of statewide standards, but, since the number of persons entitled to aid under such standards may differ in every county and since the amount of necessary funds for

such standardized relief may bear no proportionate relation to the taxable value of property within a county, it follows that uniform relief to needy persons could only be given if the amount of relief funds to be raised was determined by the need for relief in the particular county, according to the statewide standards for measuring that need. Any system whereby the state imposed a uniform rate of taxation in every county would impose a burden which bore no relation to local need. In our opinion, chapter 545 imposes a duty upon each county to levy a county tax. The statute itself is clear. It is to be "levied and collected by each county in the same manner as other taxes are levied and collected by the counties". The proceeds constitute the "county public assistance fund". Oregon Laws, 1947, ch. 545, section 1. It is further provided in section 2 of the act that overpayments, if made, shall be returned to the county by the State Public Welfare Commission. Since the tax required to be levied is a county tax, and since the levy will be uniform within each county, there is a sufficient compliance with the provisions of the constitution requiring uniformity. Again, having found that the statute provides for a county tax, it follows that there is no unconstitutional delegation of power to the Welfare Commission so far as the levy is concerned, for the Commission makes no levy. The power to tax is a legislative power which cannot be delegated to an administrative body, *(Multnomah County v. Luihn,* supra); but, a county court is a governmental body to which both the power and duty to tax may be delegated. *Stoppenback v. Multnomah County,* 71 Or. 493, 142 P. 832. As said in *Multnomah County v. Luihn,* supra, there is no obligation at common law, either upon the state, or upon its politi-

cal subdivisions, to furnish relief for the poor. But, the fact remains that the county has been the traditional instrumentality of government for the administration of such relief. The statutory imposition of such duties is not a novelty within the State of Oregon. A mandatory duty in one form or another has been imposed upon Oregon counties from early days. In 1854 it was provided that under certain circumstances "a pauper shall receive such relief as the case may require out of the county treasury". Oregon Code, 27-1404. The Laws of 1866 also imposed mandatory duties upon counties for the support of paupers. Oregon Code, 27-1406, 1407. These laws remained in effect until the establishment of the Welfare Commission in 1939. The duty to support necessarily implied a duty to tax. The duties imposed by these laws unquestionably imposed unequal burdens upon the various counties, depending upon the need in each for relief. Yet, so far as we know, the validity of these acts has never been challenged.

 Respondent asserts that if the taxes to be levied are not state taxes, "then the state legislature had no power to levy them". In support of this proposition, respondent relies upon Constitution Article IV, section 23, par. 10, supra. The prohibition of that section is against the levying by the legislature of special or local laws for the assessment and collection of taxes for state, county, township or road purposes. But, chapter 545 makes no levy of taxes. It only directs the county to do so and it does not violate the provisions of the constitution because it imposes the same duty upon every county in the state, although the performance of that duty, because of the difference in the relief burden in the respective counties, may re-

quire a greater expenditure and perhaps a higher rate of taxation in some than in other counties. As said by this court in *Evert v. Oregon & Western Colonization Co.*, 123 Or. 225, 261 P. 443, the words "local or special" are used in contradistinction to the word "general".

" * * * and, from this, it follows that if the act in question is a general law it is not a local or special law within the meaning of the Constitution.

"A local law is one operating upon persons or property within a limited boundary or specified locality. It is not the extent of the territory over which it operates that alone determines whether the law is general or local, or the number of persons who are to be governed by it. 'To be local legislation, it must apply to and operate exclusively upon a portion of the territory of the state and the people living therein,' and upon no other persons or property, 'for if it applies to and operates on persons or property beyond such locality, it is not local.' 'A special statute is one that is only applicable to particular individuals or things. "They are those made," says Mr. Sutherland, "for individual cases, or for less than a class, requiring laws appropriate to its peculiar condition and circumstances; local laws are special as to place." ' "

We conclude that the tax is a county tax; that it complies with the constitutional requirement of uniformity; that the act authorizing it is not special or local legislation; and that the power and duty to levy the tax may be, and was, validly delegated to the county courts. As thus far considered, the 1947 law is in harmony with the general statute which authorizes the county court to estimate and determine the amount of revenue to be raised for county purposes, and to levy the rate necessary therefor, *"together with the*

*rate required by law for any other purpose* \* \* \*'' O. C.
L. A., § 93-302.

We will next consider whether the legislative power
has been unconstitutionally delegated to the State Pub-
lic Welfare Commission. Paragraphs IIa; IIb; IIc;
and IIg of the demurrer relate to this subject and may
be considered together. We have already shown that
the legislature has not attempted to delegate to the
Commission any power to levy a tax, but the State
Commission, on the basis of investigations and reports
by the County Commissions, and of further investiga-
tions of its own, does determine, as a question of fact,
the amount of general assistance, old age assistance,
blind assistance, and aid to dependent children, on the
basis of need, and does certify that amount to the re-
spective county courts who are directed to levy a tax
in a sufficient amount as set forth in chapter 545,
Oregon Laws, 1947, section 2. The legislature has
empowered the State Commission to establish state-
wide uniform standards for all public assistance pro-
grams, and to direct uniform observance thereof
throughout the state. The first limitation imposed
upon the State Commission in establishing and en-
forcing such standards is that they shall be "within
the limits of available funds." Within such limits, they
shall:

" \* \* \* take into consideration all basic require-
ments for a standard of living compatible with de-
cency and health, including food, shelter, clothing,
fuel, public utilities, medical care and other essen-
tial items, and, upon the basis of investigations of
the facts shall provide budgetary guides for deter-
mining minimum costs of meeting such require-
ments. Rules and regulations made by the state
public welfare commission shall be binding on the

county public welfare departments." Oregon Laws, 1947, ch. 545, section 6.

The standardization is to be implemented by prescribing the forms to be used by the county public welfare departments, and by requiring the submission of budgets and the like by the county departments. The specific standards prescribed by O. C. L. A., § 126-106, supra, apply in the first instance to the duties of the County Commission who are directed to "receive all applications for general assistance, to ascertain the facts supporting such applications, to determine eligibility and fix the amount of assistance which any person or persons shall receive". O. C. L. A., § 126-105. The County Commissions, in determining what general assistance shall be granted, are required to take into account the income, resources and maintenance available to the individual, his necessary expenditures, and other circumstances in each case. O. C. L. A., § 126-106. The statutory authority relative to old age assistance is limited to cases in which the applicant has attained the age of sixty-five, and is to be provided on the basis of need, but only to the extent that funds are available. Other standards are established, both by statute and by rules of the State Commission. The County Public Welfare Commission is required, in determining need, to take into account resources, maintenance available, necessary expenditures of the applicant, and other existing conditions. O. C. L. A., § 126-604. Similar provisions authorize assistance to needy blind persons, (Oregon Laws, 1941, ch. 142), and to dependent children, O. C. L. A., § 126-301, et seq.

The extent of expenditures which may be authorized by the State Commission for the purposes specified is limited by the statutory provision concerning

the permissible millage tax which may be imposed by the county courts. Section 1 of chapter 545, Oregon Laws, 1947, directs a levy of 4½ mills upon the dollar by each county court. When read in connection with section 2, supra, the purpose of section 1 becomes evident. A duty is imposed upon the respective counties by legislative act to levy a 4½ mill tax. That duty is not dependent upon any action by the State Commission. The only action by which the State Commission can affect the amount of the levy in any county is by making findings by reason of which a county may be permitted to levy less than the legislative 4½ mills. The conditions under which less than that millage may be levied are dependent (1) upon the availability of other revenues, which in turn depends upon the amount of the state legislative appropriation for public assistance, and (2) upon the amount of money necessary to provide the proportionate contribution of any county for public assistance as certified by the State Commission. Thus, the issue is how much less than 4½ mills is the county required to levy, and the finding of the State Commission is only one element which enters into the determination of that issue. That element is one which could not possibly be determined by any body other than an administrative one.

O. C. L. A., § 126-110 as amended by Oregon Laws, 1947, chapter 545, provides that exclusive of all sums of money contributed by the United States government for the various specified forms of relief, the State of Oregon shall contribute 70 per cent, and the several counties "shall each contribute 30 per cent of all sums required to be expended for such purposes in and for such respective counties". The state contri-

bution is no doubt based upon estimates made by the State Public Welfare Commission, but the fact remains that the amount of the state contribution is directly determined by legislative act. See for example Oregon Laws, 1947, chapter 325, appropriating for the public assistance fund, liquor revenues in the amount of $2,143,830, and Oregon Laws, 1947, chapter 444, appropriating $22,000,000 for the same fund and from the same source. Thus, it is apparent that these provisions concerning the 70 and 30 per cent contributions of the state and counties respectively, constitute a limitation upon the power of the State Commission as regards the total amount of money which can be required from the counties. The 30 per cent of the grand total (exclusive of Federal funds) is limited as to the amount of money which must be raised, by the amount of the legislative appropriation of 70 per cent. In this manner, the state directly determines the maximum amount which may be exacted from the counties, and the apportionment to any county of a part of the state appropriation limits the amount which may be exacted from that county. It is true that it is the function of the State Commission to apportion the state appropriations among the counties, but, as we have seen, that apportionment must be based upon the need in the respective counties as determined by personal investigation.

In this year of 1949, it is too late to question the power or duty of the state to provide aid of the kind authorized by the Welfare Code. The merits of individual applications for aid cannot be determined by the legislature. To determine individual need through the judicial process would encumber the courts and bog the entire system down in a mire of confusion and

delay. If, therefore, relief is to be given at all, the determination of the merits of individual claims and the amounts to which individual claimants are entitled, must be determined under guiding legislative rules by administrative agencies who are subject to statewide supervision and direction to the end that uniformity may be attained in the treatment of needy persons throughout the state.

The rule against the delegation of legislative power to a commission is one of ancient authority, but in the application of that rule there has been a notable modern development which received its impetus from the dissenting opinions of Justice Holmes in *Springer v. Philippine Islands,* 277 U. S. 189, 48 Sup. Ct. 480, 72 L. ed. 845, (1928) and of Justice Cardozo in *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 Sup. Ct. 241, 79 L. ed. 446. In 1930 an issue arose in Oregon as to the validity of the delegation of power to county courts to waive penalty and interest on delinquent taxes. In upholding the act, this court, by Justice Rossman said:

> " * * * The mere fact that a subordinate body is granted discretion in the exercise of power conferred by a law does not necessarily demonstrate that the discretion amounts to the use of a legislative power. Any power, other than a legislative one which the legislature may exercise, it may delegate: Wayman v. Southard, 10 Wheat. 1, 6 L. ed. 253. From this fact it necessarily follows that before a statute can be condemned as conferring legislative power upon an administrative body it must be evident that the power conferred is legislative. Hence, at this point it is desirable to recognize the distinction between the delegation of power to make law or complete an incomplete act, and the conferring of authority upon a commission or official to administer a law in a manner that in-

volves the exercise of administrative discretion. Since the power to make a law includes discretion as to what it shall be this power can never be delegated, but the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative, authority conferred upon commission and boards, to determine the facts or state of things upon which the law intends to make its action depend * * *." *Livesay v. DeArmond,* 131 Or. 563, 284 P. 166, 68 A. L. R. 422.

In *Pittsburgh Plate Glass Co. v. National Labor Relations Board,* 313 U. S. 146, 61 Sup. Ct. 908, 85 L. ed. 1251, the Supreme Court of the United States said:

" * * * We find adequate standards to guide the Board's decision. While the exact limits of the Board's powers or the precise meaning of the terms have not been fully defined, judicially, we know that they lie within the area covered by the words 'employer,' 'plant,' and 'craft.' The division-wide unit here deemed appropriate is well within these limits. As a standard, the Board must comply, also, with the requirement that the unit selected must be one to effectuate the policy of the act, the policy of efficient collective bargaining. Where the policy of an act is so definitely and elaborately stated, this requirement acts as a permitted measure of delegated authority."

Again in the more recent case of *American Power and Light Co. v. Securities & Exchange Commission,* 329 U. S. 90, 67 Sup. Ct. 133, 91 L. ed. 103, the United States Supreme Court rejected the contention that the Public Utility Holding Company Act was an unconstitutional delegation of legislative power. The court said:

"We likewise reject the claim that § 11 (b) (2) constitutes an unconstitutional delegation of legis-

lative power to the Securities and Exchange Commission because of an alleged absence of any ascertainable standards for guidance in carrying out its functions.

"Section 11 (b) (2) itself provides that the Commission shall act so as to ensure that the corporate structure or continued existence of any company in a particular holding company system does not 'unduly or unnecessarily complicate the structure' or 'unfairly or inequitably distribute voting power among security holders.' It is argued that these phrases are undefined by the Act, are legally meaningless in themselves and carry with them no historically defined concepts. As a result, it is said, the Commission is forced to use its unlimited whim to determine compliance or non-compliance with § 11 (b) (2); and in framing its orders, the Commission has unfettered discretion to decide whose property shall be taken or destroyed and to what extent. Objection is also made on the score that no standards have been developed or announced by the Commission which justify its action in this case.

"These contentions are without merit. Even standing alone, standards in terms of unduly complicated corporate structures and inequitable distributions of voting power cannot be said to be utterly without meaning, especially to those familiar with corporate realities. But these standards need not be tested in isolation. They derive much meaningful content from the purpose of the Act, its factual background and the statutory context in which they appear."

" * * *

"The judicial approval accorded these 'broad' standards for administrative action is a reflection of the necessities of modern legislation dealing with complex economic and social problems. See *Sunshine Anthracite Coal Co. v. Adkins*, 310 U. S. 381, 398, 84 L ed 1263, 1273, 60 S Ct 907. The legis-

lative process would frequently bog down if Congress were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel Congress to prescribe detailed rules; it then becomes constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority * * *''

The Oregon decisions are in substantial harmony with those of the United States Supreme Court which we have cited. In the leading case of *State v. Briggs,* 45 Or. 366, 77 P. 750, 78 P. 361, this court upheld the validity of an act which authorized a board to prescribe the qualifications of barbers. In *Savage et al. v. Martin et al.,* 161 Or. 660, 91 P. (2d) 273, the court upheld the Oregon Milk Control Act as aganist the contention that it constituted an unconstitutional delegation of legislative power to a commission. That statute authorized a board to fix minimum wholesale and retail prices, to define and limit the geographical area from which fluid milk shall be produced for any given market, and authorized the fixing of basic quota for producer-distributors. The court, by Justice Lusk said:

"The constitution does not deny to the legislature 'the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply,' Schechter Poultry Corp. v. United States, supra; Panama Refining Co. v. Ryan, supra; Live-

say v. DeArmond, 131 Or. 563, 284 P. 166, 68 A. L. R. 422, and Oregon cases there cited.

"It is only necessary that the statute establish a sufficient basic standard and a definite and certain policy and rule of action for the guidance of the agency created to administer the law. State v. Newark Milk Co., supra."

The standards established by the statute, and which in the opinion of the court were sufficient to "channelize" the authority of the board, were the requirement that the board act under uniform rules and regulations in determining what portion of milk produced should be considered as "fluid milk". The standard in fixing minimum prices was that the board should take into consideration "the price necessary to produce a reasonable return to the producer." The court said:

"We think that the legislature has not given the Milk Control Board 'unfettered discretion', as the supreme Court describes it in the Schechter case, but on the contrary that it has hedged about the board's authority with definite restrictions, which must be observed or its action is unlawful. The standards set up, in our opinion, are legally sufficient and the legislature has not delegated its power to make law, but has only conferred upon the board authority to make administrative rules (United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563) in carrying out the legislative policy. * * *"

The standards fixed by the legislature in the Milk Control Act were in our opinion not more definite than those with which we are concerned in the pending case.

Two cases have been decided by this court which have a direct bearing upon the pending issue. The first is *Ladd & Bush v. Siegmund et al.*, 153 Or. 471,

57 P. (2d) 395. That case arose under the provisions of chapter 55, Oregon Laws, Special Session, 1935, and chapter 407, Oregon Laws, 1935. A petition for a writ of mandamus was filed by the petitioner as assignee of the state relief committee, to compel the officials of Marion County to issue a warrant in payment of money alleged due from the county to the State Welfare Commission. The county relief committee had certified to the state committee a list of persons in Marion County who were entitled to relief, and the amount to be received by each. The state committee had approved the list and had paid the claims of the persons listed. The county had refused to reimburse the state committee. The issues in the case were not identical to those here, but there is one striking similarity. The respondents, who were the county judge, county commissioners, and county clerk, contended that the county relief committee, and not the state committee was the proper party to disburse the relief funds to the beneficiaries and that the county was justified in refusing to reimburse the assignee of the state committee. We quote from the brief of respondents in that case:

"There is an element of discretion involved in the matter of disbursing funds collected by Marion County for the purpose of paying old age pensions, and, therefore, the county court of Marion County, Oregon, has no authority to delegate the right to disburse this fund to the state relief committee, and the payment of the item in question can not be enforced by mandamus."

The court issued a peremptory writ requiring the county to pay its obligation to the State Commission. The issue of delegation of legislative power was raised only to the extent that we have indicated, but the de-

cision rests upon the assumption that the act of 1935 was constitutional.

The second case and one on which respondent strongly relies is *Multnomah County v. Luihn,* supra. In that case a controversy had arisen between the counties and the State Public Welfare Commission resulting in a suit for declaratory judgment. The only issue with which we are here concerned was stated by this court as follows:

" * * * the county contends that its governing body, the board of county commissioners, is not required to include in its annual budget, as the county's proportion of the total cost of public assistance, such sums as the state welfare commission may direct, but, on the contrary, has discretion in the premises, and may take into consideration, in determining what sums it shall budget for such purposes, the availability of funds, the necessity of providing moneys to meet other requirements of county government, and the limitations imposed by section 11, Article XI, Oregon Constitution. The state welfare commission, for its part, maintains that its estimate of the amount required to pay the county's share of expenditures for public assistance constitutes a proper and mandatory item of county expense, which the governing body of the county is obliged to include in the county budget and for which it must levy a sufficient tax."

■ The court referred to the provisions of the Social Security Act, U. S. C. A., Tit. 42, section 302, which set forth the conditions with which a state must comply in order to qualify for Federal funds. The state plan must: ''(1) provide that it shall be in effect in all political subdivisions of the state, and, if administered by them, be mandatory upon them; (2) provide for financial participation by the State; (3) either pro-

vide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan: * * *'' We agree with the pronouncement in the Luihn case to the effect that the requirements of the state statute constitute a legislative declaration of intention to place the state in position to take advantage of the benefits tendered under the Federal act, and that the statute should be construed in relation to the provisions of that act. In our opinion, the Federal act implies that a state plan to qualify for Federal aid shall provide direct control by state authority which shall either administer the plan itself or shall authoritatively supervise a plan which shall be in effect in all counties if administered by the counties. It is contemplated by the Federal act that the supervision shall be binding upon the counties even in a county administered plan. The Oregon Welfare Code as amended by Oregon Laws, 1947, chapter 545, is an attempt to conform to the conditions imposed by the Federal act.

In *Multnomah County v. Luihn,* supra, the court gave special consideration to the provisions of O. C. L. A., § 126-906. That section, which was repealed by Oregon Laws, 1947, chapter 545, provided in part as follows:

"Each county in the state of Oregon hereby is authorized, empowered and directed annually to include in the county budget an estimated amount of the contribution required in such county for assistance * * *."

It was pointed out that the section makes no reference, either to the County Welfare Commission, or to the State Welfare Commission as the agency which

should estimate the amount required by the county. The county was merely to include "an estimated amount". Since the general rule is that the making of estimates of the amounts necessary to be raised by taxation is the function of the county court, it was concluded that the statute did not purport to require the county to levy in accordance with the estimate of the State Public Welfare Commission, but only in accordance with its own estimate. O. C. L. A., § 126-112 provided in part as follows:

"Any county in paying or contributing its part of the cost of general assistance under the provisions of this act, may issue its voucher to the state public welfare commission for the aggregate of such cost for all cases within the county * * *."

That section also has been repealed by section 8 of chapter 545, Oregon Laws, 1947, and in place thereof, it is provided that each county, in contributing a proportionate part for public assistance "*shall* issue its warrant or warrants in favor of the state public welfare commission * * *." The 1947 act requires the County Commission to find the amount necessary for public assistance and transmit its findings to the State Commission. The State Commission, after investigation, and upon the basis of standards established, approves, or revises and approves, the estimate and certifies the same to the county court, "and the amount so found shall be included in the budget of each county for the ensuing fiscal year * * *." Again, the county is expressly directed to levy a tax, and the amount of which shall be sufficient, together with other revenues, to provide the amount certified by the State Commission. What was uncertain in the law when the Luihn case was decided has been made certain beyond peradventure.

By way of pure dictum in the Luihn case, the court said:

"To sustain the constitutionality of the law, it is necessary to assume, and we do assume, that the legislature intended that the power to estimate and levy the county's contribution for public assistance purposes should continue to be exercised, as formerly, by the board of county commissioners. If the law indeed vested in the state welfare commission the power which it appears to claim, then it delegated to it a legislative function, and we should be obliged to construe it as unconstitutional."

To the extent that this dictum holds that the determination of the amount to be raised by county tax for public assistance must, under the constitution, be left to the discretion of the county court, it is disapproved. We have already shown that the county court has no vested right in the power to make its own estimate of the amount necessary for relief. The state may, by general act, require all counties to levy a county tax, and the facts on which the legislative mandate operates in each county may be found by an administrative body if sufficient standards are provided to channelize the activity of the commission. The amendatory act of 1947 has defined the policy of the state and has established sufficient standards which were held to be wanting in the statute prior to its amendment.

A further comment may be appropriate. We have cited authorities holding that the rule concerning the delegation of power to commissions is influenced by necessity, in view of the complex nature of civilization and government. The decisions which have authorized the delegation of broad powers to admin-

istrative tribunals have in almost all cases involved the power of a commission to make rules and decisions affecting the property rights of individuals, or their right to engage in a trade or profession. By way of contrast, the delegation of power in the case at bar gives no authority to affect the property rights of individuals in the conventional sense, as by regulating prices or practices. It merely delegates to a commission power and duty to carry out the will of the state in administering the bounty of the state for the benefit of persons in need. Any such act should be liberally construed in the light of its purpose and should not be stricken down by the courts unless its invalidity appears beyond reasonable doubt. *Anderson v. Thomas,* 144 Or. 572, 26 P. (2d) 60.

Respondent contends that the writ is demurrable because it fails to allege that the State Commission investigated the facts prior to its review of the findings of the County Commission. Respondent is in error. The amended writ states: "Relator reviewed the findings * * * and after investigation of the facts made a determination * * *."

Again, the respondent contends that mandamus may not lie because the statute has provided "the complete and sole remedy" available to the Commission. The provision upon which reliance is placed so far as material here, is as follows:

"If the total of the amounts paid by any county to the state public welfare commission and deposited by it in the state treasury during any fiscal year should prove to be more or less than sufficient to pay the proportionate contributions of said county of the sums required to be expended in and for such county for general assistance, old-age assistance, blind assistance and aid to dependent

children for all obligations incurred up to and including June 30 of such fiscal year, the resulting overpayment or underpayment shall be adjusted in the manner and to the extent hereinafter provided, to wit:'' Oregon Laws, 1947, Ch. 545, section 2.

The statute then provides for the return of overpayments to the counties and continues as follows:

'' * * * in the case of any county which has levied for any fiscal year a tax less than the millage specified in section 1 of this act, any underpayment shall be added to the amount found and certified by the state public welfare commission to the county court or board of county commissioners as necessary for the proportionate contributions of said county during the next or second succeeding fiscal year and shall be included in the budget and the tax rate of said county for the next or second succeeding fiscal years; provided, that in no year shall the tax levied by any county pursuant to this act exceed the maximum millage specified in section 1 hereof.'' Oregon Laws, 1947, ch. 545, section 2.

Under the provisions of O. C. L. A., § 11-302 the writ of mandamus may be issued to a board or officer to compel the performance of an act which the law specially enjoins as a duty resulting from an office. It may require a board or officer to proceed to the discharge of any of its or his functions. It may not be issued in any case where there is a plain, speedy and adequate remedy ''in the ordinary course of the law''. The provision of the 1947 act providing for the case of underpayments by the counties, imposes a duty upon the county court in the event of such underpayment, but it provides no remedy for the failure to perform the duty. As in the case of other duties imposed by the 1947 act, this duty to make up under-

payments in succeeding fiscal years could only be enforced by mandamus, there being no provision whatever for any remedy in the ordinary course of the law. The duty imposed upon the county court is defined by the statute. It is a clear duty which the respondent has refused to perform. This will not be the first time that a writ has issued requiring a county court to provide financial assistance to a needy person whose right thereto is clear under the statute. *Zachary v. Polk County Court,* 74 Or. 58, 144 P. 1182.

 Respondent quotes portions of section 2 of the 1947 Act. That section provides that the State Commission shall certify to the county courts the amount to be included in the county budgets, which is to be done after investigating the facts "and upon the basis of its statewide standards of assistance established pursuant to the Federal Social Security Act." The words "pursuant to" are used in their ordinary signification. They do not mean "in obedience to the legislative mandate of the federal act". They mean "acting in consequence of". Webster's International Dictionary, Second Edition, Unabridged. Respondent in its brief inquires:

> "What did the legislature mean? Did it mean that 'federal social security act as of April 1947' or as of then and as of such amendments as the congress or the federal bureau may make in the future? * * *".

There is a clear distinction between (1) what respondent refers to as standards, meaning the requirements defined by Federal Act, which must be met by the state if the state plan is to receive Federal approval, and (2) the standards which must be fixed by the state legislature in delegating power to the State Public Welfare Commission, a matter which we have

already discussed, and (3) the "state-wide uniform standards for all public assistance programs" which are to be fixed by the State Commission as provided in Oregon Laws, 1947, chapter 545. At this point, we are concerned with the first type of so-called standard. The Social Security Act defines the type of state plan for public assistance which if adopted will entitle the state to Federal approval and aid. It must apply throughout the state and, if administered by political subdivisions of the state, must be mandatory upon them. It must provide for financial participation by the state. It must provide for the establishment of a single state agency to administer the plan or to supervise its administration. It must provide for proper hearing in certain cases and for methods of administration concerning personnel standards, and for reports to the Federal Security Administrator. It also must provide that in determining need, the state shall take into consideration other income and resources of the claimant, and provide safeguards concerning the disclosure of information. U. S. C. A., Tit. 42, sections 301 and 302. The foregoing sections relate to old age assistance plans. Similar provisions of the Social Security Act define the state plans which will receive approval for Federal aid to dependent children. U. S. C. A., Tit. 42, sections 601 and 602, and for Federal aid to the blind. U. S. C. A., Tit. 42, sections 1201 and 1202. None of the cited sections fixing so-called standards for Federal approval have been amended subsequent to the enactment of Oregon Laws, 1947, chapter 545. The Oregon Welfare Code as amended by the 1947 Act has defined and provided for state programs which have received Federal approval and the state is receiving Federal aid for such programs.

It is unnecessary to consider what would be the result of a change in the Federal statute which defines the type of state program which will receive Federal approval, for no such change has been made.

The Social Security Act constitutes in effect an offer of financial assistance to the State of Oregon upon the condition that the state adopt and submit a plan and have it approved by the Federal Security Administrator. The state is under no legal obligation to accept the offer, but an acceptance, if made, must be in the terms of the offer. If it desires to accept, it must adopt a plan which conforms to the provisions of the Social Security Act to which we have referred, and if the plan does conform, the Federal Security Administrator "shall approve" it. The accepted plan set forth in the Oregon Welfare Code, as amended, creates the State Public Welfare Commission and requires that Commission to fix state-wide uniform standards for all public assistance programs. Those standards are state standards which the legislature has directed the State Commission to establish in consequence of the offer contained in the Social Security Act. It is only in that sense that the standards of assistance established by the State Commission can be said to be pursuant to the Federal Social Security Act. Whether a substantial change in those requirements, if made, would invalidate the State Act because passed in consequence of the Federal Act, or whether such change, if made, would simply leave the State Welfare Code in effect to sink or swim without benefit of Federal aid, are questions not before us now.

Respondent asserts that "if the legislature intended to adopt in this act any standard" to be fixed

in the future by the Federal government, "that would be delegating to Congress or some Federal bureau the power in the future to change Oregon law." As we have pointed out, it is only the type of plan which is defined in the Social Security Act. The adoption of the plan is by the legislative act of the state and the uniform statewide standards are the product of commission action under legislative authority. There is no delegation to any Federal body of the power to change Oregon Law.

Respondent calls attention to the fact that three sections of the Federal Act relating to public assistance have been amended since 1947. Those sections are U. S. C. A., Tit. 42, sections 303, 603 and 1203, relating respectively to old age assistance, aid to dependent children and aid for the blind. The amended provisions do not purport to impose any duty upon the state nor do they impose any new condition with which the state must conform if the state plan is to receive Federal approval. The amended sections of the Social Security Act establish new formulae for determining how much money the Secretary of the Treasury shall pay to each state which has an approved plan. We see no reason why a change of formula should affect the validity or operation of the State Welfare Code unless the legislature of Oregon should become dissatisfied with the amount of Federal contributions and should amend or repeal the law. It so happens that under the formulae adopted by the amendments to the Social Security Act, the amount of money to be paid to the state by the Secretary of the Treasury is made to depend upon the amounts expended by the state and its political subdivisions under the State Welfare Code as amended. If there

be any delegation of legislative power, and we think there is none, it would appear to be a delegation by Congress to the state whose estimates and appropriations fix the amount of the Federal contribution. The State Welfare Code as amended by the 1947 Act is not subject to the objections urged by the respondent.

The duty was imposed upon the county court to budget the full sum of $43,901 in accordance with the determination made by the State Public Welfare Commission, and to do it prior to the levy of county taxes in July, 1948. The respondent notified the relator that it would not levy a tax for or otherwise provide and contribute to the public assistance program in Malheur county for the year 1948-49 any sum other than the sum of $39,879.60. We may assume that the county has budgeted and has issued, or will issue, its warrants in the sum of $39,879.60. The statute imposes a clear duty upon the county court to pay over to the State Public Welfare Commission and to deposit in the state treasury the amount certified to it by the State Public Welfare Commission and to levy a tax sufficient when added to all other revenues available for such purpose to provide the certified amount. Oregon Laws, 1947, chapter 545, sections 1 and 2. It is further required to "issue its warrant or warrants in favor of the State Public Welfare Commission for one-quarter of the total of the tax levied and sums set aside by the county for those purposes on or before the first day of each calendar quarter of each fiscal year". id. sec. 3. These provisions impose a duty upon the county court of Malheur county forthwith to issue warrants in the sum of $10,975.25 which was due July 1, 1948, and the further sum of $10,975.25 which was due October 1, 1948, and the further sum

of $10,975.25 which was due January 1, 1949, less such payments as may already have been made. It is also the duty of the county court to issue a warrant in favor of the State Public Welfare Commission for the sum of $10,975.25 as a fourth quarter installment on or before April 1, 1949. The 1947 act also imposed upon the respondent the duty to budget and set aside for contribution by Malheur county to the state welfare program for the fiscal year beginning July 1, 1948, and ending June 30, 1949, a sum equal to the difference between $43,901 and the amount heretofore budgeted for said purpose and for said fiscal year. It appearing that the respondent has failed and refused to budget the required sums for said fiscal year, it becomes its duty before July, 1949, to add to the amount certified by the State Public Welfare Commission to the county court, as necessary for the proportionate contribution of said county during the fiscal year 1949-50, the amount of the underpayment which was not budgeted and levied as required by law for the year 1948-49, and to include such added amount in the budget and tax rate of said county for the year 1949-50, subject to the limitation that the tax levied shall not exceed 4½ mills. id. Sec. 2.

A peremptory writ will issue commanding performance by the respondent of the duties imposed upon it by the statute and in conformity with this opinion. Petitioner may prepare and submit a form of peremptory writ and upon motion, paragraph IX of the alternative writ may be amended to bring about conformity between the two. 35 Am. Jur., Mandamus, Sec. 371, p. 111.